Robin WRIGHT *v.* ARKANSAS DEPARTMENT
of HUMAN SERVICES

CA 02-1253                                    115 S.W.3d 332

Court of Appeals of Arkansas
Division IV
Opinion delivered August 27, 2003

*Louis L. Loyd*, for appellant.

*Richard Neil Rosen*, Office of Chief Counsel; and *Margaret R. Beam*, Attorney *ad litem*, for appellee.

J OHN MAUZY PITTMAN, Judge. This is an appeal from an order terminating the parental rights of appellant to her minor son, C.J., who was born on January 15, 2000. Appellant argues on appeal that the evidence was insufficient to warrant termination of the parent-child relationship. We do not agree.

Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Crawford v. Department of Human Services*, 330 Ark. 152, 951 S.W.2d 310 (1997). Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2002), the facts warranting termination of parental rights must be proven by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the trial court clearly erred in finding that the relevant facts were established by clear and convincing evidence. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* Furthermore, we will defer to the trial court's evaluation of the credibility of the witnesses. *Crawford v. Department of Human Services, supra.*

In the present case, the record shows that appellant is a single mother. During the course of the proceedings, she resided with her boyfriend, Mr. Todd Smith. A petition for emergency custody was filed by the Arkansas Department of Human Services on February 23, 2001, based on a report by the child's day-care provider that C.J. had been delivered to day care by Todd Smith on February 20, 2001, with a black left eye and bruises about his nose, face, and left ear. After a hearing, the trial court found that probable cause existed to remove C.J. from appellant's custody. Appellant was ordered to complete parenting classes, to obtain stable housing and employment, to submit to random drug-testing, and to cooperate with the Department of Human Services. Todd Smith was ordered to complete parenting classes before having any further contact with the child.

A subsequent adjudication hearing set the goal as reunification. Corporal punishment of the child was prohibited, and appellant was granted weekend visitation, as well as thirty extended visits to take place after completion of two satisfactory weekend visits and satisfactory drug testing results. After a review

hearing on May 2, 2001, the trial court found that appellant had complied with all of the court's orders and followed all of the recommendations of the case worker. She therefore ordered that C.J. be returned to appellant's custody, and that the Department of Human Services should provide continued supportive services.

Less than two months later, on June 29, 2001, the Department of Human Services filed a second petition for emergency custody alleging that, on June 28, 2001, Todd Smith delivered C.J. to the emergency room of National Park Medical Center. The child was unconscious and in a coma, with a contusion over his left eye and a hematoma to the back of his head. There was also bruising to the child's scrotum, an ulcerated or deep sore at the base of the child's penis, and bruising to the child's anus. The child had pubic hair alongside his penis, around the scrotum in his diaper, and in the anal area. Todd Smith informed the emergency room physician that he had been babysitting for the child when the child fell backwards and struck his head on a railing. A pediatric resident at Arkansas Children's Hospital testified that it appeared that the child's anus was dilated as a result of a penetrating injury, and that these injuries could not have been caused by the fall as explained by Todd Smith. The child was left partially paralyzed by his injuries.

A warrant was issued for the arrest of Todd Smith on charges of physical and sexual abuse of the child. An order of emergency custody was issued. The allegations made in the second emergency custody petition were found to be true and correct at a subsequent adjudication hearing. Appellant was ordered to follow all prior orders of the court, comply with the case plan and directions of the Department of Human Services, and was allowed only restricted and supervised visitation with the child. Todd Smith was ordered to have no contact whatsoever with the child.

The Department of Human Services filed a motion to discontinue efforts at reunification. The trial court granted the motion, and the Department of Human Services filed a petition to terminate appellant's parental rights, alleging that the child had suffered serious and life-threatening injuries while in appellant's custody, had been twice removed from her custody, and that the potential existed for future abuse. The trial court granted the petition, finding that the child had been out of the home for more than twelve months and that, despite efforts to rehabilitate the home and correct the conditions causing removal, appellant had

failed to remedy those conditions. The trial court further found that there was the potential for further harm to the child if left in appellant's custody, noting that, despite extensive medical testimony indicating that the child had been physically and sexually abused, appellant continued to insist that the child's injuries were the result of accident rather than abuse, as indicated by her appearance and favorable testimony at Todd Smith's bond-reduction hearing.

On appeal, appellant candidly concedes that the child suffered serious injuries; that he may never recover from those injuries; and that the evidence throughout the record indicates that the child suffers from Shaken Infant Syndrome, has been sexually abused, and that Todd Smith was "most possibly" the perpetrator. Nevertheless, she argues that there is no evidence that she had anything to do with the injuries caused to her son. Appellant's argument is interesting and merits quotation at length:

> It is obvious from the record, that there were problems with the care of this minor child and it is very tragic what has happened to the child. However, the blame cannot be placed solely on the shoulders of the Appellant. The record is void of any evidence to indicate that the Appellant inflicted any of the injuries on the minor child. The Appellant abided by all the orders of the Court. She attended the classes, cooperated with DHS and made regular visitations with the child. The record reflects that the Appellant made every effort to maintain a mother child relationship with her son. Granted, the Appellant made some bad decisions about her home environment in living with Todd Smith and allowing Mr. Smith to care for the child while she was working, but that in and of itself, should not constitute enough to strip her of her biological right to be a mother of her child. She is a young, single and obviously naive young woman who made the mistake of entrusting the care of her child to the wrong person. Nowhere does the record reflect that the Appellant did so intentionally, or that she [sic] adequate notice from the first set of injuries that Mr. Smith was capable of committing future acts of abuse.

First, we note that appellant concedes on appeal that her boyfriend probably was the person who injured the child. This differs substantially from her position at trial, where she testified that she did not think that Mr. Smith harmed her child, and that she believed Mr. Smith's denials even after hearing medical experts

testify to the contrary. The record is replete with evidence that appellant cares more about her boyfriend's well-being than about that of her severely injured and grossly abused child. Sandra Rowe, a social worker at Arkansas Children's Hospital, testified that appellant was entrenched in denial that her boyfriend could harm her child in any way, that she rejected the physician's diagnosis of Shaken Baby Syndrome, and that she minimized serious medical information about her child and instead focused on the innocence of her boyfriend. Another social worker at Arkansas Children's Hospital, Shirley Cox, testified that appellant made numerous excuses for her boyfriend, was very focused on him, and that her boyfriend appeared to be her first priority. Appellant herself testified that she did not believe Todd Smith intentionally injured her child, that she moved out of Mr. Smith's home only because she was expressly ordered to do so by the trial court, that she continued to remain in contact with Todd Smith, and that she will consider Todd Smith to be her boyfriend "until the State proves something."

Appellant is badly mistaken in her belief that her parental rights cannot be terminated because she complied with the case plan and did not personally injure her child. She had a far greater duty to the child than she recognizes. It is not enough for her to refrain from personally harming the child; instead, it is her duty to take affirmative steps to *protect* the child from harm.

> The rights of parents are not proprietary and are subject to their related duty to care for and protect the child and the law secures their preferential rights only so long as they discharge their obligations. *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980); *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979); *Kirk v. Jones, supra; State v. Grisby, supra.* The unfitness for which this preferential right to custody may be forfeited can result from a parental failure to discharge any of the correlated duties of parenthood. In *Grisby* it was stated that this preference for natural parents is based on a presumption that they will take care of their children, bring them up properly and treat them with kindness and affection, and when that presumption has been dissipated chancery will interfere and place the child where those parental duties will be discharged by another.

*Jones v. Jones*, 13 Ark. App. 102, 108, 680 S.W.2d 118, 121 (1984).

■ Nor is completion of the case plan determinative. What matters is whether her completion of the case plan achieved the intended result of making her capable of caring for her child. Appellant's continued denial of personal responsibility demonstrates that she manifested indifference or the incapacity to remedy the subsequent issues and properly protect her child. *Ullom v. Arkansas Department of Human Services*, 340 Ark. 615, 12 S.W.3d 204 (2000); *see also Ullom v. Arkansas Department of Human Services*, 67 Ark. App. 77, 992 S.W.2d 813 (1999); *Corley v. Arkansas Department of Human Services*, 46 Ark. App. 265, 878 S.W.2d 430 (1994).

Affirmed.

HART and ROBBINS, JJ., agree.