Sheila JUDKINS *v.* Donnie DUVALL,
Michael Wayne Duvall, Susanna Duvall, Bobby Judkins,
Lola Judkins, Office of Child Support Enforcement and
Arkansas Department of Human Services

CA 06-258                                    248 S.W.3d 492

Court of Appeals of Arkansas
Opinion delivered January 31, 2007

*Michael S. Robbins, P.A.*, by: *Michael S. Robbins*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn* and *Traci LaCerra*, for appellee Donnie Duvall.

JOHN B. ROBBINS, Judge. Appellant Sheila Judkins appeals a permanency planning order entered by the Pope County Circuit Court that granted custody of her son Braydon to his biologi-

cal father, appellee Donnie Duvall. Appellant asserts that the trial court erred (1) in denying the motion to remove the child's attorney ad litem; (2) in granting temporary and later permanent custody to appellee, which is contrary to the goal of the Juvenile Code; (3) in considering a change in custody absent a finding of a material change in circumstances; and (4) in changing custody where it was not in the child's best interest. We disagree with her arguments and affirm.

These parties were never married. Braydon was born in March 1998. Appellee, a resident of Russellville, sought to determine his paternity in a Pope County proceeding, and he was found to be the biological father in a June 19, 2000 order. Appellee was granted visitation and was ordered to pay child support. Appellant and Braydon lived in Atkins at that time. The relationship between appellant and appellee was acrimonious.

On December 2, 2002, appellant filed a petition to halt appellee's visitation due to her belief that appellee had sexually abused their four-year-old son. Appellant attached a letter from Braydon's counselor, wherein the counselor recounted being informed of this allegation, and her recommendation to the mother to take the child to his pediatrician and to call the child abuse hotline. On December 4, 2002, appellee filed a motion for contempt due to appellant refusing him his Thanksgiving holiday visitation. More motions seeking identical relief were filed by each party in January 2003. In March 2003, appellee filed a motion to change custody in response to appellant having coached their son to make false allegations of abuse.

In May 2003, the trial judge entered an order based upon the opinions of Braydon's pediatrician and counselor that appellee's visitation should be modified, and that appellant had legitimate concern for her child's welfare. Braydon exhibited emotional issues and aggression. Visitation was thereafter allowed, provided that there were neutral parties to make the exchange. In December 2003, appellant again asked that visitation be suspended due to new allegations of sexual abuse that appellee perpetrated on Braydon. Although DHS had determined that the allegations were unfounded, appellant asserted that she was convinced that such abuse was occurring. In addition, appellant asked that a family-in-need-of-services ("FINS") case be opened.

In July 2004, the trial judge decided that Braydon was a member of a family in need of services, as defined in Ark. Code Ann. § 9-27-303. The judge found that in order to protect the

child, it was necessary that DHS take custody of him. The judge found compelling the opinion of psychologist, Dr. DeYoub, that appellant had a personality disorder that was adversely affecting Braydon. Braydon was at that time a patient in a mental health facility in Little Rock. Each parent was allowed to have unsupervised visitation and was ordered to undergo counseling. Current and overdue child support were directed to be paid to DHS. Also in July 2004, the trial court appointed an attorney ad litem via the public defender's office. As a result of that order, the managing public defender appointed Jefferson Faught as attorney ad litem to represent Braydon's interest.

Both sets of grandparents intervened in this case. Appellant's parents filed a motion to remove the attorney ad litem on the basis that he was biased and adverse toward appellant because he had represented her former husband in divorce proceedings. Appellant joined her parents' motion. The ad litem assured the trial judge that he could perform his duties as ad litem without being influenced by the previous litigation experience with appellant. The trial judge denied the motion after a pretrial hearing conducted in November 2004.

A mandatory review hearing was conducted in January 2005, during which the trial judge weighed the value of the opinions rendered by various mental health service providers, among whom there was "tremendous disagreement." The trial judge found that appellant suffered from some mental problems, that the numerous sexual-abuse allegations were all unsubstantiated, that no further allegations had been made against appellee subsequent to the child's removal from appellant's custody in July 2004, that the child's mental health had improved since his removal, that the child's affect was good when he was around his father in contrast to times with his mother, and that temporary custody would be placed with appellee. Appellant was allowed to have visitation with her son, and DHS was ordered to open a protective-services case on the family. Counseling was ordered to continue.

Appellant filed a motion for the trial court to reconsider its findings entered from the January 2005 review hearing. She challenged the accuracy of Dr. DeYoub's conclusions regarding appellant's mental health, and she challenged the placement of her son with his father as contrary to the goals of a FINS case. Appellant's parents (as Intervenors) moved the trial court to

reconsider removing the attorney ad litem as biased against their daughter, appellant. The trial court denied this second motion.

After a permanency planning hearing, the trial court issued a permanency planning order, which is the subject of this appeal. It was filed on October 20, 2005, and it reflected that the trial court had considered a permanent plan for Braydon pursuant to Ark. Code Ann. § 9-27-338 (Supp. 2005) and the options for placement in order of statutory preference. The trial judge found in relevant part that:

> [T]he juvenile is no longer in need of the services of the Arkansas Department of Health and Human Services. Return to the custody of the mother is contrary to the welfare of the juvenile and placement of the juvenile in the permanent custody of the father is in the best interests of and necessary to the protection of the juvenile's health and safety.
>
> . . . .
>
> That the juvenile cannot be returned home to his mother in that it is not in the best interest of the juvenile to return home to his mother and that the juvenile's health and safety cannot be adequately safeguarded if returned home to his mother[.]
>
> . . . .
>
> That it is in the best interest of the juvenile that the goal of this case be changed to authorizing a plan to place the juvenile in the permanent custody of his father, Donnie Duvall.

The judge found that the protective services case should be closed. Appellant was allowed visitation. Appellant filed a timely notice of appeal from the permanency planning order.

For her first point of appeal, appellant contends that the trial court erred in denying her motion to remove the attorney ad litem appointed for her child on the basis that he was adverse to her and could not be impartial. We affirm the trial court's denial of her motion to remove attorney Faught.

In *Kimmons v. Kimmons*, 1 Ark. App. 63, 613 S.W.2d 110 (1981), our court emphasized that an attorney ad litem may be appointed to represent the child's interest in custody litigation.

More specific to FINS cases, "the juvenile has the right to be represented at all stages of the proceedings by counsel." Ark. Code Ann. § 9-27-316(a)(1) (Supp. 2005). Appellant does not dispute that an attorney ad litem could be beneficial. Instead, she argues that this particular one should have been disqualified.

Appellant fails to persuade because she does not offer any evidence that attorney Faught was in fact adversely biased against her. Her belief, alone, will not support such an accusation. The trial court was persuaded by attorney Faught's reassurance that he could provide attorney ad litem services to the child without any effects from prior litigation experience with appellant. This decision resulted from a pretrial hearing, which was not recorded and transmitted for appeal. It is presumed that the discussion during the unrecorded hearing supports the trial court's findings. *See Rush v. Wallace*, 23 Ark. App. 61, 742 S.W.2d 952 (1988); *Wagh v. Wagh*, 7 Ark. App. 122, 644 S.W.2d 630 (1983). It is appellant's burden to bring up a record sufficient to demonstrate that the trial court was in error. *See Dodge v. Lee*, 352 Ark. 235, 100 S.W.3d 707 (2003); *Estate of Seay v. Quinn*, 352 Ark. 113, 98 S.W.3d 821 (2003). Appellant has failed to demonstrate that the trial court erred in denying her motion to remove the attorney ad litem. We affirm this point.

Appellant's second point on appeal is that the trial court erred in granting temporary and then permanent custody of the child to appellee. She asserts that this decision is in contravention of the goal stated in Ark. Code Ann. § 9-27-303(25)(B) (Supp. 2005), in a FINS case, which is to reunite the child with the parent from whom custody was taken. This argument is not well taken.

Appellant's attorney asked that this case be deemed a FINS case, and this request was honored and ordered by the trial court in July 2004. When the case came to be heard for permanency planning, the trial court had before it six options to set as a goal for the case pursuant to Ark. Code Ann. § 9-27-338(c) (Supp. 2005). While the highest preference would have been to return the child to the parent from whom he had been taken, that choice would be valid only if it was in the child's best interest to do so and if the child's health and safety could be adequately guarded if returned to appellant's custody. *See id.* § 9-27-338(c)(1). Instead, the trial judge chose option (c)(4), which was to authorize a plan to obtain permanent custody with a relative, in this case his father, appellee.

■ Appellant has failed to demonstrate that the trial court erred in applying the statutory preferences. The trial court specifically stated that it considered the alternatives in order of such preference but that it was in the child's best interest to be in the custody of his father, which is a permissible disposition. We affirm this point.

■ Appellant's third point on appeal is that the trial court erred in failing to require a showing of a material change in circumstances to warrant a change of custody. She bases her argument on the premise that she was the custodian of this child born out of wedlock, and that the biological father bore the burden to establish a material change of circumstances since the order establishing paternity in June 2000. She cites *Norwood v. Robinson,* 315 Ark. 255, 866 S.W.2d 398 (1993). Had this case been a purely domestic relations proceeding, such a burden would be placed upon the biological father to show such a change. This case was converted, by appellant's request and by the trial judge's agreement with that assessment, into a FINS case. With that, the disposition of the child removed from the home and the permanency placement plan were governed solely by the Juvenile Code. Ark. Code Ann. § 9-27-301 *et seq.*

Appellant's final argument for reversal is that the trial court erred in finding that it was in Braydon's best interest to grant custody of him to his father. Appellant contends primarily that Dr. DeYoub's evaluation of her mental status was faulty at best, and his opinion should not have been credited. She recounts the evidence of sexual abuse that she deems more than credible. In short, she asserts that the trial court clearly erred in deciding that Braydon should live with his father.

In equity matters, such as juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the trial court's findings are clearly erroneous. *See Moiser v. Ark. Dep't of Human Servs.,* 95 Ark. App. 32, 233 S.W.3d 172 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *See id.*

We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Noland v. Noland,* 330 Ark. 660, 956 S.W.2d 173 (1997). This deference to

the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999).

There were undoubtedly variations of opinion about whether these sexual abuse allegations were true, and whether appellant's mental health was as fragile as asserted by Dr. DeYoub. This is precisely the function of the trier of fact — to weigh the credibility of the witnesses and the weight to be accorded the testimony — which we will not disturb on appeal. Because we are not left with a distinct and firm conviction that a mistake has been committed, we affirm. *See Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001); *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001).

The permanency planning order is affirmed.

GLOVER and MILLER, JJ., agree.