2009 Ark. App. 754

**Joseph BEARDEN, Jr., Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, and Minor Child, Appellees.**

**No. CA 09–455.**

Court of Appeals of Arkansas.

Nov. 11, 2009.

Deborah Ruth Sallings, Little Rock, for Appellant.

Leah Beth Lanford, Little Rock, Tabitha Baertels McNulty, Little Rock, for Appellee.

RITA W. GRUBER, Judge.

This is a termination-of-parental-rights case. Joseph Bearden, Jr., appeals from the Washington County Circuit Court's termination of his parental rights to his son, T.W., born July 21, 2005.[1] The circuit court based its decision on the ground that T.W. had been out of appellant's home for twelve months and, despite a meaningful effort by DHS to rehabilitate appellant, the conditions that caused the child's removal had not been remedied by appellant. We affirm the circuit court's decision.

DHS has a long history with appellant and his family. In a prior proceeding, from August 2005 until November 2006, T.W. was in foster care after being removed from his mother's care. The court placed him in the legal custody of appellant and that case was closed. DHS has also been involved with appellant's wife. When this case began, another protective-services case for medical neglect of T.W.'s stepbrother was open. DHS took emergency custody of T.W. on November 29, 2007, along with two of his stepsiblings, after his older stepsister showed up at school with a slap mark, bruises, and scrapes that her mother could not adequately explain. Further investigation revealed that T.W. had bruises on his buttocks and right leg. When the DHS worker attempted to discuss the situation with appellant, he was belligerent and threatening, telling her that she was "messing with the wrong family," that he was "out for blood," and that he would "see [her] in the grave." Appellant was later convicted of terroristic threatening for those statements.

The Madison County Circuit Court entered an order for emergency custody on December 3, 2007, and held a probable-cause hearing on December 7, 2007. Find-

---

1. The child's mother consented to the termination of her parental rights.

ing probable cause, the court ordered appellant to have a psychological evaluation; to refrain from using illegal drugs and alcohol; to obtain and maintain stable housing and employment; to maintain a clean, safe home for T.W.; and to demonstrate the ability to keep him safe. The court gave appellant one hour of supervised visitation, twice per week, and ordered him to have no contact with the family-service worker that he had threatened.

DHS moved to terminate reunification services on December 26, 2007, on the grounds that T.W. was subjected to aggravated circumstances, abandoned, chronically abused, and suffered medical neglect, and that there was little likelihood that services to the family would result in successful reunification.

Appellant submitted to a psychological evaluation by Dr. Martin Faitak on February 4, 2008. Dr. Faitak diagnosed appellant with antisocial personality disorder and stated that he had poor self-control, feelings of victimization, and an unstable mood. The psychologist described appellant as insensitive to the needs of others, self-focused, irresponsible, hostile, demanding, controlling, distrusting, dominant, and inflexible. Dr. Faitak recommended that appellant participate in individual therapy, adding that, unless he improved, he would have difficulty tolerating special-needs children.

The court considered the motion to end reunification services at the adjudication and first permanency-planning hearing held on February 22, 2008. It found T.W. dependent-neglected as a result of abuse and parental unfitness. The court stated that appellant and his wife were not stable, noting that neither had a job and that they had moved several times. It added that T.W. had special needs he did not have

before he was placed in his father's custody. The court set the goal of reunification and reduced appellant's supervised visits to once per week; after a month, he could have two visits per week. In addition to the previous requirements, the court ordered appellant to complete parenting classes. It found that DHS had made reasonable efforts and denied its petition to terminate reunification services. It ordered DHS to provide assistance with transportation and in-home intensive family services to appellant; to conduct a home study on his home; and to set up individual counseling if his psychological evaluator recommended it. The court ordered appellant to follow those recommendations and found that he was not able to pay child support at that time. The court transferred the case to Washington County.

On June 13, 2008, over three months after Dr. Faitak recommended that appellant seek individual counseling, appellant began seeing a therapist, Kathleen Housley. The court held a review hearing on June 25, 2008. It continued the goal of reunification but noted that appellant had not complied with intensive family services; was still unstable in employment and housing; had an unstable relationship with his wife; and had not adequately addressed his anger and mental-health issues.

After another permanency-planning hearing on September 10, 2008, the court changed the goal to adoption and termination, finding that appellant's housing and employment were unstable and that he had separated from his wife a second time. The court ordered him to pay child support.

DHS filed a petition to terminate appellant's parental rights, and the court held the termination hearing on January 6, 2009. Appellant attended with his attorney. Tara Marcom, the Washington

County family-service worker; Laura Phillips, T.W.'s foster mother; and appellant testified. Among the exhibits admitted were the July through November 2008 reports by Ms. Housley, who stated that appellant had made a lot of progress with his anger issues. The CASA report, however, said that appellant had made very little progress and recommended that his parental rights be terminated.

From the bench, the trial court recognized that appellant was in partial compliance and had made some progress in managing his anger, but stated that, looking at the "whole picture" since T.W. was first placed with appellant, he lacked stability in housing, employment, and relationships. Most troubling, the court stated, was T.W.'s lack of a bond with appellant:

> [D]uring visits when little T.W. hears Ms. Phillips's voice, he cries and wants to be with her. So Ms. Phillips now is not the one to transport him to the visits, and she sneaks around if she happens to be in the building so he won't know.... But T.W. still shows signs that he doesn't want to be in the room.... And what's hugely telling is when T.W. is on his way to DHS, he starts to cry because he knows the way. Once he gets there, he clings to Ms. Phillips ... or ... whatever caseworker's there and doesn't really want to ... visit. Very telling is that when he goes to DHS for other reasons ... he's fine. That is a huge, huge telling sign here.

The trial court found that appellant could not meet T.W.'s special needs and that returning him to appellant would not be in T.W.'s best interest:

> The testimony is that he clings to the caseworker, he clings to Ms. Phillips when dad comes for visits. After the visits, he's totally clingy ... a child who already has special needs of occupational therapy, physical therapy, and potty training problems to where he's ... shaking and crying and ... fear.... I believe that it would cause emotional damage to this child. I agree ... with the caseworker that the child would regress and have emotional problems. [W]hen you have young children of T.W.'s age, you look at their actions. You don't rely on their words to tell you how they're feeling.... [P]lacing him in the custody of his dad today would be very detrimental.

In the order, the circuit court found that termination of appellant's parental rights was in T.W.'s best interest, based upon the likelihood that the child would be adopted and the potential harm to T.W.'s health and safety by continuing contact with appellant. The court also found clear and convincing evidence that T.W. had been out of appellant's custody for twelve months and, despite a meaningful effort by DHS to rehabilitate appellant and correct the conditions that caused the removal, those conditions had not been remedied by appellant. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a* ) (Repl.2008). The court found that appellant had not complied with the court orders, case plan, and services offered by DHS; did not have stable housing or employment; had an unstable relationship with his wife; and had not demonstrated that he could properly and safely parent T.W. and meet his physical, emotional, and special needs. The court further found that continuing contact with appellant could emotionally damage T.W. Appellant then brought this appeal.

A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence. *Strickland v. Arkansas Dep't of Human Servs.*, 103 Ark.App. 193, 287 S.W.3d 633 (2008). The question we must answer is whether the trial court

clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights. *Hall v. Arkansas Dep't of Human Servs.*, 101 Ark.App. 417, 278 S.W.3d 609 (2008). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Dowdy v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. An order terminating parental rights must be based upon a finding by clear and convincing evidence that (1) termination of parental rights is in the best interest of the child, considering the likelihood that the child will be adopted if the parent's rights are terminated and the potential ⌐7harm caused by returning the child to the parent's custody, and (2) at least one ground for termination exists. *Ratliff v. Arkansas Dep't of Human Servs.*, 104 Ark.App. 355, 292 S.W.3d 870 (2009); *see* Ark.Code Ann. § 9–27–341(b)(3)(A), (B) (Repl.2008). We review termination-of-parental-rights cases de novo. *Ratliff, supra.* However, we will not reverse the circuit court's finding of clear and convincing evidence unless that finding is clearly erroneous. *Id.*

Appellant does not challenge the court's findings that T.W. was likely to be adopted or that DHS established grounds. The only point he raises on appeal is that there was insufficient evidence to support the trial court's determination that termination of his parental rights was in T.W.'s best interest because of the potential harm that could be caused by returning him to appellant's custody. Appellant argues that the evidence of any potential harm to T.W. was "non-existent," pointing to the ways in which he complied with the case plan and court orders. For example, during this case, he worked as a metal scrapper, a maintenance man for a trailer park, and a farm worker; he lived in the same home between late August 2008 and trial; he completed the psychological evaluation; he participated in, and benefitted from, the recommended individual therapy; he completed parenting and anger-management classes; he passed all of his drug screens; he consistently and appropriately participated in visitation; he had transportation; and there was no evidence that his home was unsafe, dirty, or inappropriate. Appellant further asserts that the court's emphasis on the lack of bonding between him and T.W. was misplaced in light of their limited amount of ⌐8visitation and that, if he had been given longer visits, he and T.W. could have become closer. He further asserts that there was no evidence that he might not be able to handle a child with T.W.'s special needs.

Even though appellant did make some progress, the trial court's best-interest finding is supported by the evidence. A parent's rights may be terminated even though he is in partial compliance with the case plan. *Chase v. Arkansas Dep't of Human Servs.*, 86 Ark.App. 237, 184 S.W.3d 453 (2004). Even full completion of a case plan may not defeat a petition to terminate parental rights. *Wright v. Arkansas Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making the parent capable of caring for the child. *Id.*

The evidence clearly showed that, during this proceeding, appellant lacked stability in housing, employment, and relationships. He was living with his wife, her children, and T.W. when this proceeding began. At some point after that, another woman and her child (whom appellant considered adopting) lived with appellant while his wife was in the same household. He and his wife did not cooperate with

intensive family services. At the time of the hearing, he was no longer with either woman but was still legally married. He moved in with his aunt, and then to the trailer park, where he remained at the time of the hearing. When T.W. was taken into custody, appellant was working as a truck driver. He then was unemployed for a month or so before going to work somewhere else for a few months. After that, he worked for a towing service, his aunt's hay farm, and then a newspaper. Next, he began working as a maintenance man and selling scrap metal for the owner of the trailer park, where, at the time of the hearing, he was employed for forty hours a week at $9.00 per hour. We do not find fault with appellant for the type of employment he obtained nor the addresses where he chose to live. The fault lay, as Ms. Marcom testified, that appellant had never provided her with evidence that would allow her to conclude that he could provide a stable home or had sufficient income to meet T.W.'s needs.

The trial court understandably found T.W.'s behavior around appellant to be most telling. We give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dowdy, supra.* There is uncontroverted evidence that T.W. suffered from developmental delays that did not manifest until he was placed in appellant's custody. When this case began, T.W. was more than two years old, but did not talk, and was so scared of people that he would jerk whenever someone walked up to him. Ms. Phillips testified that he did not walk, talk, or eat solid food when he first came into her care. In spite of the extensive evidence of T.W.'s serious developmental delays, appellant did not acknowledge the child's problems and denied playing any part in their development. Ms. Marcom

testified that she did not believe that appellant was capable of taking care of T.W.'s special needs.

Additionally, T.W.'s disturbing behavior before, during, and after visits, clearly documented in the record, demonstrated a genuine fear of appellant. Ms. Phillips reported that, after T.W. had been in her care for awhile, she attempted to potty-train him, with little success. She described T.W.'s resistance to her efforts: "It was a body-shaking, screaming, crying, you couldn't even get him around the toilet without him just breaking down and crying and shaking from fear...." Appellant testified that he and his wife had begun attempting to potty-train T.W. before DHS took custody of him. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Arkansas Dep't of Human Servs.,* 102 Ark.App. 337, 285 S.W.3d 277 (2008). The harm analysis is to be conducted in broad terms. *Id.* In light of the extensive bruising on T.W.'s body when he came into DHS's custody the second time, the trial court did not err in placing significant weight on the child's lack of a bond with appellant, which persisted throughout this proceeding. We also note that this case is analogous to *J.T. v. Arkansas Department of Human Services,* 329 Ark. 243, 947 S.W.2d 761 (1997), where the Arkansas Supreme Court affirmed termination of parental rights based upon the trial court's finding that the appellant lacked the capacity to be the type of parent that the child needed.

Affirmed.

VAUGHT, C.J., agrees.

HART, J., concurs.

JOSEPHINE LINKER HART, Judge, concurring.

I agree that this case must be affirmed, but write separately to clarify how close a question this is. Much of appellant's argument has merit. While it is true that appellant did change residences, there is no clear and convincing [11]evidence that any of the residences that he chose were inappropriate or unsafe. In this regard, appellant's reliance on our decision in *Strickland v. Arkansas Department of Human Services*, 103 Ark.App. 193, 287 S.W.3d 633 (2008), is eminently sound. Likewise, there is merit in his argument that the record shows that, save for a very brief period, he maintained employment throughout the pendency of this case. I further agree that the mere fact that none of his jobs were "glamorous" should not support a finding that he would be unable to provide for his family. Indeed the record is a testament to Mr. Bearden's resourcefulness. I simply cannot accept an opinion that seems to suggest that work as a day laborer made him an "inadequate parent." Likewise, I do not share the majority's willingness to speculate that a two-year-old child's so-called "lack of bonding" with appellant was proof of the "potential harm" that would result from reunification with appellant. I agree with appellant that the child's reaction was a product of the child apparently being more comfortable with a foster parent who had custody twenty-four hours a day, seven days a week, rather than appellant, who was afforded only a single hour of visitation each week.

I believe that this case should be affirmed only because there is uncontroverted evidence that T.W. suffered from developmental delays that did not manifest until the child was in appellant's custody. Significantly, appellant refused to acknowledge that T.W. suffered from these problems. In this regard, I believe the instant case is analogous to *J.T. v. Arkansas Department of Human Services*, 329 Ark. 243, 947 S.W.2d 761 (1997), in which the Arkansas [12]Supreme Court affirmed the termination of parental rights where the trial court determined that the appellant did not have the capacity to be the type of parent that the child needed.