2011 Ark. App. 317

**Jeannie BEESON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA11–9.**

Court of Appeals of Arkansas.

April 27, 2011.

Janet Renee Lawrence, Conway, for appellant.

CLIFF HOOFMAN, Judge.

Appellant Jeannie Beeson appeals from the order of the Ouachita County Circuit Court awarding permanent custody of her son, A.B., to his maternal grandmother, Teresa Millican. Beeson's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6–9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004).[1] The clerk of this court mailed a certified copy of counsel's motion and brief to Beeson's last known address informing her of her right to file pro se points for reversal; however, she has not done so. We grant counsel's motion to withdraw and affirm the order awarding permanent custody to Millican.

Prior to the facts giving rise to the current case, Beeson had two other cases with the Arkansas Department of Human Services (DHS) where A.B., whose date of birth is June 21, 2006, was adjudicated dependent-neglected. The first case was opened in January 2007, when Beeson was arrested for criminal mischief and disorderly conduct after getting into a fight with A.B.'s father and driving her vehicle into a wall with A.B. in the car. A.B. was removed from Beeson's custody at that time, but custody was returned to her in June 2007 after Beeson completed the case plan. In May 2008, DHS filed another petition for dependency-neglect when Beeson took A.B. to the hospital after suspecting that he had ingested half of a Soma tablet that she had left on an end table. The adjudication order stated that Beeson had left the hospital against medical advice

---

1. Although *Linker–Flores* specifically addressed the no-merit appeal of an order terminating parental rights, this case is a no-merit appeal from a permanent-custody order. Because Ark.Code Ann. § 9–27–316(h) (Repl.2009) provides for the appointment of counsel for indigent parents in "all proceedings to remove custody from a parent or guardian or to terminate parental rights," no-merit appeals from awards of permanent custody in dependency-neglect cases are also authorized under the rationale in *Linker–Flores. See also Collier v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 565, 2009 WL 2877611 (affirming no-merit appeal from award of permanent custody although not specifically addressing whether such appeals are generally allowed). In addition, though Rule 6–9 does not specifically mention this type of appeal, our supreme court in *West v. Arkansas Department of Human Services,* 373 Ark. 100, 281 S.W.3d 733 (2008), held that permanency-planning orders that grant permanent custody are final, appealable orders under Ark. R. Civ. P. 2(d) (2010).

due to her fear that DHS would remove A.B. from her custody and that she had also tested positive for THC. A.B. remained in Beeson's custody, and the case was closed in April 2009 after Beeson again complied with the case plan and court orders.

The present case was opened after a report was made to the child-abuse hotline that Beeson had driven her car into a wall with A.B. inside, and a seventy-two hour hold was taken on November 20, 2009, to protect A.B. from immediate danger of severe maltreatment. According to the affidavit attached to the petition for dependency-neglect, A.B. had a cut on his hand from playing with a knife, and Beeson had recently notified a relative that she did not have any food or money. A probable-cause order was entered on December 2, 2009, and temporary custody of A.B. was placed with Teresa Millican and her husband, James Millican. The trial court ordered Beeson to undergo a drug screen and complete a psychological evaluation. At the adjudication hearing on January 6, 2010, Beeson admitted that A.B. was dependent-neglected, that she had overdosed on October 9, 2008, and August 30, 2009, that she had received a DWI on October 31, 2009, that she was arrested and charged with shoplifting on November 27, 2009, and that she was involved in a wreck on November 16, 2009, due to an argument with her boyfriend, Richard Hindman. Beeson also admitted that A.B. was left in Hindman's care for approximately one hour and that Hindman was not an appropriate caregiver due to prior drug use and domestic violence issues.

A review hearing was held on April 7, 2010. The evidence at this hearing showed that Beeson had a negative drug screen and that she had complied with the case plan. After the completion of a favorable home evaluation on Beeson's residence, the trial court authorized DHS to arrange weekend visitation with A.B. On June 16, 2010, another review hearing was held, at which the evidence showed that Beeson had not complied with the case plan by not maintaining contact with DHS and by not attending counseling due to her incarceration in May. Beeson was ordered to maintain a stable home and steady employment, to resolve her criminal charges, to obtain her driver's license, and to become "deeply involved" in counseling. Visitation with A.B. was suspended pending compliance with these orders. A petition for termination of Beeson's parental rights was filed by DHS on June 22, 2010.

The next review hearing was held on August 4, 2010. The DHS caseworker, Barbara Henderson, testified regarding Beeson's extensive history with DHS, the services that had been provided to her, and her current compliance with the case plan. According to Henderson, Beeson had completed her psychological evaluation, although it initially had to be rescheduled due to her incarceration in January. Henderson stated that Beeson went to two counseling sessions until she was again incarcerated for thirty days in May, but that she had been to every appointment beginning in July. Beeson had also recently gotten her driver's license and provided proof of employment with her grandfather. However, Henderson stated that Beeson was not in compliance with the majority of the case plan prior to the filing of the termination petition, in that she had not maintained contact with DHS, she had missed three scheduled visits with A.B., she was always late in returning A.B. from visitation, she had not maintained steady employment, and she had admittedly lied under oath at the prior hearing about still having contact with Hindman, who had recently been arrested for felony possession of drugs. Henderson testified that, based upon Beeson's history, she was con-

cerned that if further services were provided to Beeson and A.B. was returned to her custody, "we will come back again." Henderson stated that she did not know if completing the case plan and returning A.B. to Beeson's custody would be a "positive thing" for A.B., and she testified that it was in A.B.'s best interest for him to remain with the Millicans permanently.

In her testimony, Beeson admitted that stable employment and housing had been issues in her prior cases with DHS as well. Beeson stated that she had six different jobs since 2007 and had moved six times. However, Beeson testified that she currently had a stable home with |₅her grandfather and steady employment at his business. She further stated that she had pled guilty to three different charges of shoplifting and to a DWI, that she had been arrested for failing to appear twice, that she had been given three tickets for failing to have a driver's license, and that she had been incarcerated two different times during the past year. At the time of the hearing, Beeson testified that there were no pending criminal charges and that she wanted further services from DHS so that she could regain custody of A.B. She stated that she was "moving in that direction," although she agreed that she had "done this at the last minute."

Following the hearing, the trial court reserved its ruling and ordered that Beeson and Millican attend mediation to work out a schedule for visitation. At the next hearing on October 6, 2010, the trial court noted that DHS, upon Millican's request, had moved to modify its petition for termination of Beeson's parental rights to a petition for permanent custody with Millican instead. Millican testified that Beeson had been having visitation on Sundays with A.B. and that the visits had gone fairly well. According to Millican, there was one occasion where Beeson showed up unannounced on Saturday evening and wanted to spend the night, and when Millican initially refused, Beeson told A.B. that she was going to sleep in the car. Millican stated that she had informed Beeson that there were to be no more overnight stays during visitation. Millican testified that she believed it would be in A.B.'s best interest for him to remain in her permanent custody but that she was not trying to keep A.B. from his mother and that she still wanted Beeson to have visitation.

Based upon the evidence presented at the August and October 2010 hearings, the trial |₆court awarded permanent custody of A.B. to Millican, finding that it was in the best interest of A.B. and necessary to the protection of his health and safety. The trial court closed the case, leaving visitation at Millican's discretion. In making its ruling, the trial court stated that it was confident that Millican wanted A.B. to have a relationship with his mother and that if this were not the case, then the court would be scheduling visitation. The trial court found it disturbing that Beeson would tell A.B. she had to sleep in the car because Millican would not let her stay the night and stated that those were the kind of statements that were "seriously damaging" to A.B. The trial court stated that Beeson needed to cooperate with her mother as to visitation and that she needed to understand "that her son comes first and foremost and not herself." Beeson appeals from this decision.

We first address the issue discussed in the no-merit brief regarding the trial court's decision to award permanent custody to Millican. The burden of proof in dependency-neglect proceedings is by a preponderance of the evidence. Ark.Code Ann. § 9–27–325(h)(2)(B) (Repl.2009). We do not reverse the trial court's findings on appeal unless they are clearly erroneous. *Judkins v. Duvall*, 97 Ark. App. 260, 248

S.W.3d 492 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.* We also give due deference to the superior position of the trial court to view and judge the credibility of the witnesses, and this deference is even greater in cases involving child custody, where a heavier burden is placed upon the trial judge to utilize his or her powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. *Id.*

Pursuant to Ark.Code Ann. § 9–27–338(c) (Repl.2009), which governs permanency-planning hearings, once a child has been in an out-of-home placement for fifteen of the previous twenty-two months, the trial court shall enter one of the permanency goals listed in the statute, in accordance with the best interest of the juvenile. A plan for permanent custody with a fit and willing relative is listed as a goal under subsection (c)(5).

The trial court in this case found that an award of permanent custody to Millican was in A.B.'s best interest, as it was contrary to his health and safety to be returned to the custody of Beeson. This decision was not clearly erroneous. The evidence showed that Beeson demonstrated a lack of stability throughout the case, as well as the two prior cases with DHS. She failed to maintain steady employment or a stable residence, she has had numerous criminal charges in the past several years, and she was incarcerated on two different occasions during the present case. Beeson attempted suicide on four occasions, both by overdosing on medication and by driving her car into a building with A.B. inside. She continued to associate with a person who she admitted was not a proper caregiver for A.B. and who also had allegations against him of criminal activity and domestic violence, and she lied under oath about her contact with this person. Although Beeson attempted to fully comply with the case plan and court orders after the termination of parental rights was filed, such actions in the months or weeks immediately preceding the permanency-planning hearing are insufficient grounds for authorizing a plan to return home. Ark.Code Ann. § 9–27–338(c)(2)(A)(ii). In addition, completion of the case plan itself is not determinative; the primary issue is whether completion of the plan achieved the desired result of making Beeson capable of caring for A.B. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). Throughout her history with DHS, Beeson has fully complied at times with the case plan and has had A.B. returned to her custody; however, she is still not capable of caring for him and acting in his best interests, according to the evidence presented. Thus, we agree with Beeson's counsel that there would no merit to an appeal on this issue.

There is one other adverse ruling that is abstracted but not discussed by counsel in her brief. At the hearing, the attorney ad litem objected on hearsay grounds to Beeson's testimony concerning Millican's feelings toward Hindman. The trial court sustained the hearsay objection. The testimony was clearly hearsay, and there is no merit to an appeal on this issue. We may affirm despite counsel's failure to discuss this ruling in cases such as these, as long as the adverse ruling is clearly not a meritorious ground for appeal. *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877; *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, 2010 WL 2522197. Based upon our review of the record and brief submitted, we conclude that counsel has complied with Rule 6–9(i) and agree

that the appeal is without merit.[2] There-fore, we affirm the permanent-custody order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VAUGHT, C.J., and GLADWIN, J., agree.

**2.** We note that, in the petition on appeal, counsel concludes by requesting that this court "issue an opinion reversing and remanding the order of the circuit court in this matter." Because counsel's motion to withdraw and the remainder of her brief argue that an appeal would be without merit, we are convinced that this statement was merely an oversight and thus do not order rebriefing.