

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-979

| | |
|---|---|
| EVETTE MOORE<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND<br>MINOR CHILD<br><br>APPELLEES | Opinion Delivered: JUNE 22, 2016<br><br>APPEAL FROM THE ST. FRANCIS<br>COUNTY CIRCUIT COURT<br>[NO. JV-14-181]<br><br>HONORABLE ANN B. HUDSON,<br>JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

**KENNETH S. HIXSON, Judge**

Appellant Evette Moore appeals from the July 7, 2015 order of the St. Francis County Circuit Court that awarded permanent custody of her son A.M. to his paternal uncle, Eddie Aldridge.[1] Moore's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6-9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004).[2] The clerk of this court mailed a certified copy of counsel's motion and brief to

---

[1] A.M.'s biological father is deceased.

[2] Although *Linker-Flores* specifically addressed the no-merit appeal of an order terminating parental rights, this case is a no-merit appeal from a permanent-custody order, which is also authorized under the *Linker-Flores* rationale. *See Beeson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 317, 378 S.W.3d 911; *Collier v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 565 (affirming no-merit appeals from award of permanent custody). In addition, although Rule 6-9 does not specifically mention this type of appeal, Arkansas Rule of Appellate Procedure—Civil 2(d) (2015) provides that "[a]ll final orders awarding custody are final appealable orders."

Moore at her last known address informing her of her right to file pro se points for reversal, and Moore filed pro se points for our consideration. The Department of Human Services ("DHS") and the child's attorney ad litem filed a joint response, agreeing with appellate counsel that there is no issue of arguable merit to raise on appeal. We grant counsel's motion to withdraw and affirm the order awarding permanent custody to A.M.'s paternal uncle.

I. *Factual and Procedural History*

A.M. came into DHS's emergency custody as the result of a child-abuse hotline call. On July 10, 2014, Moore had summoned the St. Francis County Sheriff's Department to her home insisting that they take A.M. out of her house or she would kill him; Moore was intoxicated. She had reported that she was mad because a relative had bought A.M. an expensive pair of shoes. The affidavit in support of emergency custody recited that Moore had a history with DHS: A.M. had come into foster care in May 2012, which lasted until August 2012, and there was a true finding of inadequate supervision in May 2014. A protective-services case was opened on July 10, 2014 at 2:30 a.m. DHS recommended that A.M. be placed in foster care and that the names of family and friends "be gathered and researched for possible home studies." An ex parte order for emergency custody was entered.

On July 15, 2014, a probable-cause hearing was conducted. The trial court found that "the mother was intoxicated and threatening the child." At the adjudication hearing on August 26, 2014, Moore "stipulated to inadequate supervision based on [being] under the influence of intoxicating substances." DHS was ordered to conduct home studies on relatives interested in having custody of A.M. The minor was placed in a residential

treatment facility called WoodRidge in August or September 2014 to treat behavioral issues.[3]

A review hearing was conducted on October 28, 2014. At that point, Moore had "somewhat complied" by attending substance-abuse classes and AA meetings, but she continued to "struggle with alcohol abuse." Moore admitted that she had battled alcoholism since childhood but that she had been sober for over a month. She also admitted that she had tried to commit suicide because she was unable to cope with the stressors in her life. A.M. remained in the residential treatment facility; he had not yet completed the treatment program. At the conclusion of the review hearing, the trial court kept reunification with Moore as the goal with a concurrent goal of relative placement. The trial court ordered that when A.M. was released from treatment, he was not to return home to his mother.

The matter was reviewed again on January 13, 2015. The concurrent goals remained reunification and relative placement. A.M.'s paternal uncle, Eddie Aldridge, testified that A.M. stayed with him over the holiday break and that A.M. was well behaved. A.M. was still residing at the treatment facility. Aldridge stated that his (Aldridge's) mother and sister lived across the street, enabling them to spend time together. He stated that he could be a calming influence and a good role model in A.M.'s life. Again, Moore was found to have "somewhat complied." The trial court again ordered that when A.M. was released, he was

---

[3] A.M. admitted that before DHS intervention this time, he had been smoking marijuana while in his mother's custody. A.M. admitted that he would sneak out of his mother's house, which he said was not difficult to do because his mother was blind and because she drank to excess. Furthermore, A.M. and his mother did not get along.

SLIP OPINION

not to be returned to his mother's home. The trial court entered an order giving temporary custody to Aldridge. Moore's visitation was ordered to be supervised.

Court reports indicated that A.M. was released from residential treatment on January 26, 2015, and he was happy to be living with his uncle. A.M. was attending school. Moore was permitted telephone contact with A.M., and DHS provided her transportation for supervised visitation.

On March 3, 2015, another review hearing was conducted. The trial court reiterated that Moore was somewhat in compliance with her outpatient counseling and AA meetings. The trial court ordered Moore to continue to attend to counseling, meetings, and also attend a day treatment for her mental-health issues.

A court report dated June 16, 2015, noted that A.M. was having problems adjusting to his new school but that he remained happy to be with his uncle. Moore was noted to have completed parenting classes, and she was continuing with counseling. Also on that date, a review hearing was conducted.

Aldridge testified that "eighty percent of the time [A.M.] is good but then there is the twenty percent." He wanted A.M. to remain in his custody. He was willing to abide by the court's orders and understood that there was to be no unsupervised visitation with Moore absent court approval. Moore testified that she would like for her son to return home. She stated that she had done everything that the court had asked of her. DHS recommended that permanent custody be given to A.M.'s uncle.

The trial court found that Aldridge having permanent custody of A.M. was in the minor's best interest; that A.M. wanted to remain with his uncle; and that Moore's

supervised visitation was to be at the uncle's discretion. From the bench, the trial judge remarked that this case had been heard "over and over" allowing Moore to rectify the situation but that "it has always gone back to the same thing." The trial court found that the uncle had complied with the court's orders and provided a stable home environment for A.M. but that Moore was not compliant in remaining alcohol free. An order memorializing these findings was entered on July 7, 2015, and this is the order from which this appeal was lodged.

## II. *Analysis*

In a no-merit appeal, the attorney must present a brief that complies with our court rules that mandate counsel to explain why all adverse rulings made by the trial court would not support a meritorious appeal. Ark. Sup. Ct. R. 6-9(i) (2015). In this case, counsel correctly states that the only adverse ruling in the hearing from which the appeal arose was the decision to grant permanent custody of the minor to his uncle. At a permanency-planning hearing, Arkansas Code Annotated section 9-27-338 (Repl. 2015) requires the trial court to enter a permanency goal in accordance with the best interest of the child, and one permissible goal under the statute is to authorize a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative. Section 9-27-338(c)(6). The burden of proof in dependency-neglect proceedings is by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B). We do not reverse the trial court's findings on appeal unless they are clearly erroneous. *Judkins v. Duvall*, 97 Ark. App. 260, 248 S.W.3d 492 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been

committed. *Id.* We also give due deference to the superior position of the trial court to view and judge the credibility of the witnesses, and this deference is even greater in cases involving child custody, where a heavier burden is placed upon the trial judge to utilize his or her powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. *Id.*

The trial court in this case found that an award of permanent custody to Eddie Aldridge was in A.M.'s best interest, as it was contrary to his health and safety to be returned to his mother's custody. This decision was not clearly erroneous, and no issue of arguable merit could be raised on appeal.

The evidence showed that Moore had a significant history with DHS intervention and a long-term alcohol problem. To her credit, Moore attended some parenting classes, counseling, and Alcoholics Anonymous meetings. Nonetheless, after another significant period of time out of his mother's custody, A.M. had completed his own residential treatment and was well adjusted to being in his uncle's custody. Aldridge had provided the stability and parental control that Moore could not achieve; Aldridge became the role model for A.M. that Moore could not be. Completion of the case plan itself is not determinative; the primary issue is whether completion of the plan achieved the desired result of making Moore capable of providing consistently proper parental care for A.M. *See Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). The trial court did not clearly err in deciding that, ultimately, Moore could not parent her teenage son in the manner that was necessary for his safety and best interest and that A.M.'s best interest was served by being in his relative's permanent custody.

SLIP OPINION

Even in Moore's pro se points for reversal, she states that she wants A.M. (now almost sixteen years old) to remain in his uncle's custody until completion of high school; the change she seeks is to have her visitation unsupervised. Moore states that she has not seen her son in nine months, although she talks to him on a weekly basis. Her pro se points for reversal do not substantively impact the decision to award permanent custody of A.M. to his uncle. In summation, we agree with appellate counsel that there would be no merit to an appeal of the trial court's decision on permanent custody of A.M. *Compare Sisemore v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 187 (affirmed order granting permanent custody of minor to a relative despite Sisemore's compliance with case plan and recommendations from DHS, CASA, and attorney ad litem that Sisemore be permitted three more months to attempt to achieve reunification); *Beeson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 317, 378 S.W.3d 911 (no-merit appeal; affirmed order granting permanent custody of a minor to a relative despite Beeson's attempt to fully comply with case plan).

Based on our review of the record and brief submitted, we conclude that counsel has complied with Rule 6-9(i) and agree that the appeal is without merit. Therefore, we affirm the permanent–custody order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

KINARD and WHITEAKER, JJ., agree.

*Kimberly Eden*, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.