Claudia PROWS *v.* ARKANSAS DEPARTMENT of HEALTH and HUMAN SERVICES

CA 07-1219                                       283 S.W.3d 637

Court of Appeals of Arkansas
Opinion delivered April 30, 2008

*Heather L. Schmiegelow,* for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for the minor child.

D.P. MARSHALL JR., Judge. Claudia Prows has a long history of mental disease and has been diagnosed with bipolar disorder and paranoid schizophrenia. She appeals the termination of her parental rights to her young son, Z.C.[1] Claudia raises several points on appeal, including that the circuit court erred as a matter of law by ruling that it could not consider her recent mental stability. We agree. Because we reverse and remand on this point, we do not address her other arguments.

Claudia's mental instability has greatly affected her ability to care for her son since he was born in April 2005. DHS removed Z.C. from his parents' custody about five months after his birth because Claudia's "state of mind and her concerns that someone might be coming to get her child" made it unsafe for Z.C. to stay in his parents' home. Claudia and her husband stipulated that Z.C. was dependent-neglected, and the circuit court so held in an October 2005 order. After that adjudication, Dr. Lloyd Spencer diagnosed Claudia with bipolar disorder. Dr. Spencer tried but failed to stabilize Claudia's condition with medication. For the next year and a half, Claudia missed doctor's appointments and did not take her medication consistently. Dr. Spencer concluded that the adverse effects from her medications caused her to stop taking them. During that time, Claudia had some excellent visits with her son, while others were failures. For example, DHS placed Z.C. in Claudia's care for a thirty-day trial placement. But after a week, Claudia gave Z.C. back to DHS because she was unable to care for him. Shortly thereafter, the circuit court entered a permanency-planning order changing the goal of the case to termination and adoption.

In February 2007 — about four months after DHS filed its termination petition — Claudia told Dr. Spencer that she needed his help to prevent losing Z.C. permanently. She began following his recommendations and seeing him frequently. He corrected her

---

[1] The circuit court also terminated Z.C.'s father's parental rights. But the father did not appeal the termination.

medications and began regular therapy. During the next six months, Claudia's mental state improved.

At the termination hearing in late August 2007, Dr. Spencer testified that, although Claudia was not ready to be a single parent that day, he has seen "a great deal" of improvement in her since February 2007. He concluded that she was capable of supervised visits with Z.C. immediately, and would probably be ready for unsupervised visits in three to six months. He could not give a date certain when Claudia could manage sole custody. Nor did he testify that she would never be capable of being Z.C.'s parent. Claudia did not argue that her mental problems were a disability that would implicate the Americans with Disabilities Act and allow for "reasonable accommodations" by DHS. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*b*) (Repl. 2008).

The circuit court ruled from the bench that "this is probably one of the hardest cases I've had to decide . . . so I went back and started reading the Code . . . once I read the law it's actually crystal clear . . . if [Z.C.] is not able to go home today, then I have to terminate . . .." It then terminated Claudia's parental rights on the grounds that Z.C. had been out of her custody for twelve months and, despite a meaningful effort to rehabilitate her and correct the conditions that caused Z.C.'s removal from the home, those conditions had not been remedied. Ark. Code Ann. § 9-27-341(b)(3)(B)(i).

■ In its termination order, the court also stated that "[t]he fact that Mother has had some recent stability cannot play a role according to ACA 9-27-341(b)(3)(B)(vii)." After our *de novo* review, *Ivers v. Dep't of Human Servs.*, 98 Ark. App. 57, 67, 250 S.W.3d 279, 285 (2007), we conclude that the court made an error of law requiring reversal. The cited statute contains no such evidentiary bar. Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*) allows termination on the following ground:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

We give this unambiguous statute its plain meaning. *Rylwell, L.L.C. v. Arkansas Development Finance Authority*, 372 Ark. 32, 36, 269 S.W.3d 797, 800 (2007). And this statute does not prohibit the circuit court's consideration of Claudia's recent mental stability.

■ The circuit court terminated Claudia's parental rights under subsection (i), not subsection (vii). That subsection likewise contains no prohibition on considering Claudia's recent improvements. The termination statute, moreover, required that the court consider Claudia's compliance during the entire dependency-neglect case and the evidence presented at the termination hearing in deciding whether termination was in Z.C.'s best interest. Ark. Code Ann. § 9-27-341(a)(4)(B). Here the circuit court did not consider everything required by the statute.

■ We recognize that evidence of parental improvement as termination becomes imminent will not outweigh other evidence demonstrating a failure to remedy the situation that caused the child to be removed in the first place. Ark. Code Ann. § 9-27-341(a)(4)(A); *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 355, 201 S.W.3d 391, 401 (2005). But the circuit court should have considered and weighed the evidence about Claudia's recent improvements. Its failure to do so was error. We therefore reverse and remand for consideration of Claudia's recent mental stability.

■ This legal error was not, as the attorney *ad litem* contends, harmless in light of the evidence supporting termination under Ark. Code Ann. § 9-27-341(b)(3)(B)(i). The circuit court terminated Claudia's parental rights because of her mental instability and failure to remedy that condition. And the court's consideration of her recent stability may affect its conclusion. The circuit judge's statement from the bench that she had to terminate Claudia's parental rights if Z.C. was not able to go home with her immediately after the hearing was also incorrect. The statute does not impose this standard. The statute seeks stability for the child, while allowing a parent a reasonable time (all material things considered) to correct problems. Ark. Code Ann. § 9-27-341(a)(3). According to the Department of Children and Family Services supervisor in this case, Z.C. has been in at least two foster homes and "a couple of respites" since DHS removed him from Claudia's care. Given the lack of stability thus far in Z.C.'s life, and the court's incorrect statement of the law from the bench that it

had to terminate if Z.C. could not go home on the day of the hearing, Claudia's recent mental stability may well affect the court's ultimate decision. We are therefore convinced that the court's failure to consider her improvements was not a harmless error.

Reversed and remanded.

PITTMAN, C.J., and ROBBINS, J., agree.