2012 Ark. App. 313

**John CROW, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 12–4.**

Court of Appeals of Arkansas.

May 2, 2012.

Leah Lanford, Little Rock, for Appellant

Tabitha Baertels McNulty, Little Rock, for Appellee.

RAYMOND R. ABRAMSON, Judge.

Appellant John Crow's parental rights in his daughter, E.M., born July 7, 2009, were terminated by the Perry County Circuit Court on October 6, 2011.[1] On appeal, Crow argues that the trial court failed to consider his recent progress when it terminated his parental rights. We affirm.

E.M. was taken into emergency custody by the Department of Human Services (DHS) on May 17, 2010, after numerous reports had been made regarding her mother, Lacy Morehead. The most recent allegations included Morehead using drugs, having unstable and unsafe living conditions, and hitting ten-month-old E.M.

---

1. The mother's parental rights were also terminated, but she is not a party to this appeal.

in the head for "pooping" in her diapers. An ex parte order for emergency custody was entered on May 20, 2010, with appellant listed as E.M.'s putative father. A hearing took place on May 25, 2010, and a probable-cause order was entered on June 18, 2010. The court stated that appellant would not be granted visitation until he produced an order of paternity, at which time he would be allowed the same visitation as Morehead—one hour of supervised visitation a week at the DHS office.

Following a hearing, an order was entered on July 22, 2010, adjudicating E.M. dependent-neglected based on "general parental unfitness, the transient lifestyle and frequent moves of the mother and child, the mother's use of prescription drugs not prescribed to her, and general instability of the mother." The court found that appellant was E.M.'s biological father based on DNA test results and ordered DHS to offer him all services previously ordered with regard to Morehead, including random drug screens. The court also ordered that appellant have a drug-and-alcohol assessment if any screen was positive, with any recommendations to be followed; attend individual counseling and have a psychological evaluation, with recommendations to be followed; attend parenting classes; maintain stable housing, income, and employment; and notify DHS of any change in address or telephone number. The goal of the case was set as reunification with the mother.

After a hearing in September, a review order was entered on October 26, 2010. Appellant's parenting certificate, a drug-and-alcohol assessment, and a packet of drug screens were offered into evidence. The court found that both parents were "making efforts to comply with the case plan and court orders." The court went on to express "doubts" about whether the

conditions that caused removal were remedied. The concerns focused on Morehead, but the court also stated, "The Court has issues with Mr. Crow, then later his sister Ms. Spaul, each having a romantic relationship with the mother in this case. This causes the Court grave concerns about boundary issues within these families and whether any of them are emotionally appropriate to parent this child. The Court believes this child is at substantial risk of emotional harm." Finally, as pertinent to this appeal, the court ordered DHS to initiate a home study on the home in which appellant was then residing.

Another review hearing was held on December 10, 2010. The resulting order reflects that appellant's drug-screen results and psychological evaluation were introduced into evidence. The court found that appellant was making efforts to comply with the case plan and court orders, and again ordered DHS to complete the home study of appellant's current residence.

After a hearing in March 2011, the court entered a review/permanency-planning order on April 6, 2011. The court ordered that an attorney would be appointed to represent appellant. While the court expressed serious doubts about the mother's progress and parenting, the goal of the case remained reunification, this time "with the parties also working toward pursuing placement with [appellant] John Crow." The court noted that appellant seemed to be the better prospect for reunification, but his home study was not favorable because of a pond located immediately next to the home and other safety concerns. Appellant had employment and transportation.

On April 26, 2011, DHS filed a motion to suspend visitation for both parents due to drug use. An affidavit showed that appellant tested positive for opiates, "benzo," and THC on April 8, 2011; for THC on

April 15; and again for THC on April 20. Appellant did not ₄have a prescription for the medications and stated that he last smoked marijuana in March. The court ordered that both parents would have visitation supervised at DHS, and if either appeared intoxicated, that visitation would immediately be suspended.

A review/permanency-planning hearing was held on June 17, 2011. The evidence offered included a discharge summary for appellant from Freedom House, a substance-abuse treatment center in Russellville, and several drug screens. The drug-screen exhibit listed numerous positive drug screens, with the most recent on June 3, 2011. The discharge summary showed that appellant had been discharged from drug treatment as "incomplete" after he chose to leave treatment rather than transfer to residential treatment. In the resulting order, the court changed the goal of the case to adoption.

On August 9, 2011, DHS filed a petition for termination of parental rights. In the petition, DHS alleged that, at the permanency-planning hearing in June,

> Mr. Crow was living with his sister, who has an open protective service case out of Conway County. He had no job or income. He signed into inpatient treatment at Freedom House, but left before completing the program.
>
> The child has been out of the home and in DHS'[s] custody more than 12 months. The mother nor father has not remediated that [sic] conditions that caused removal. The mother and father continue to lack ... stable housing, employment, or income. In addition, other factors have arisen that prevent the safe return of the juvenile.... The parents have demonstrated an unwilling[ness] to remedy their drug problems which prevent the safe return of the juvenile to either of their custody. The parents

have been offered reunification services for more than one year and continuing to offer reunification services would not result in reunification.

The termination hearing was held on September 16, 2011. Dr. George DeRoeck, a psychologist, testified that he performed evaluations of both parents. In his October 2010 psychological evaluation, Dr. DeRoeck diagnosed appellant with a personality disorder and ₅considered alternative placement for E.M. Dr. DeRoeck noted a lack of capability in terms of appellant's overall cognitive processing, "characterological" features, and possible other mental issues. He testified that he was also concerned about the history of substance abuse and the possibility of a substance-abuse-induced persisting mood or cognitive disorder.

Margaret Linker, a counselor-in-training at Freedom House, testified regarding appellant. According to Linker, appellant had successfully completed the inpatient program in early 2007, after being court-ordered to the program. Linker was appellant's primary counselor when he entered the outpatient program on November 8, 2010. At first, appellant did very well in the program—participating in groups, making his appointments, and passing random drug tests. Beginning in February, appellant lost his focus and started missing appointments and making excuses. Linker stated that in the very beginning she recommended inpatient treatment because of the distance (DHS was providing transportation) and the fact that appellant was not working; however, appellant wanted to stay in the outpatient program. After having several unexcused absences for group and one for individual therapy in February, appellant tested positive for THC on March 17, 2011. Appellant was placed on a "zero tolerance" contract at that time. After learning from

appellant's DHS caseworker that he tested positive for THC, Xanax, hydrocodone, and hydromorphone on April 8, Linker discharged appellant from the treatment program. She recommended that he enter residential treatment, but he stated that he could not do that. He later entered the residential treatment program on May 12, but he had trouble following the rules and left the program on May 25.

E.M.'s foster mother, Sandra Burbank, testified that E.M. had been living with her and her family since May 18, 2010. There were initially some concerns about E.M.'s small size, but she had "come up on the growth scale." Burbank described E.M. as a "normal, wonderful little two-year old."

DHS caseworker Shiloh Marlar testified that she had been assigned to the case since May 13, 2011. She stated that appellant had obtained a job at Sonic two weeks before the termination hearing, was living with his sister, and did not have transportation. Appellant did not complete his drug rehabilitation; his drug screens had been consistently negative since July 26, 2011. Fourteen months into the case, appellant was allowed only one hour a week of supervised visitation. Marlar testified that DHS recommended termination of parental rights.

The DCFS supervisor for Perry County, Casey Myers, testified that she had been involved in the case from the beginning. She stated that appellant had been avidly seeking employment and had a few short-term jobs. During the case, he had lived with one sister, then another sister, a cousin, and his mother. He informed Myers recently that he was thinking of moving out of his sister's home into his girlfriend's home. Myers testified that appellant consistently attended visitation and had a bond with E.M. Nonetheless, she recommended termination based on the lack of

stability in appellant's life. Even if appellant did have stable employment, Myers stated that she would still have concerns about him raising E.M. because she feared E.M. would be exposed to her mother.

Rebecca Kincannon, an adoption specialist for Perry County, testified that she had reviewed E.M.'s case "a little." She believed E.M. to be adoptable based on her age and race because most applicants were interested in adopting Caucasian children under age five.

After hearing the arguments of counsel, the court went through the case history in some detail and ruled from the bench. The court found that it was in the child's best interest to terminate parental rights and that the parents had failed to achieve minimal competency within the sixteen months that the case had been active. An order terminating parental rights was entered on October 6, 2011. Appellant filed a notice of appeal on October 24, 2011, and this appeal followed.

The standard of review in termination-of-parental-rights cases has been set forth as follows:

> We have held that when the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. The facts warranting termination of parental rights must be proven by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. Clear and convincing evidence is that degree of proof which will produce in the fact

finder a firm conviction regarding the allegation sought to be established. In resolving the clearly erroneous question, we must give due regard to the opportunity of the [trial court] to judge the credibility of witnesses. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations.

*Bearden v. Ark. Dep't of Human Servs.,* 344 Ark. 317, 328, 42 S.W.3d 397, 403–04 (2001) (quoting *Ullom v. Ark. Dep't of Human Servs.,* 340 Ark. 615, 621, 12 S.W.3d 204, 208 (2000)) (citations omitted).

■ Appellant cites Arkansas Code Annotated section 9–27–341(a)(4)(B) (Repl. 2009), which provides, "The court shall rely upon the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing in making its ₈decision whether it is in the juvenile's best interest to terminate parental rights." He argues that the entire record here demonstrates that he had been "working diligently throughout the case to overcome his drug addiction, find a job and maintain a close and meaningful relationship with his daughter." He contends that the court committed reversible error by failing to consider his recent progress and weigh it in relation to all of the other evidence of improvement. He cites *Prows v. Arkansas Department of Health and Human Services,* 102 Ark.App. 205, 283 S.W.3d 637 (2008), but that case is distinguishable. In *Prows,* the trial court erred in its interpretation of the termination statute, writing that "[t]he fact that Mother has had some recent stability cannot play a role according to A.C.A. 9–27–341(b)(3)(B)(vii)," when in fact there was no such evidentiary bar contained in the statute. *Prows,* 102 Ark.

App. at 208, 283 S.W.3d at 639. Here, the trial court did consider appellant's (alleged) recent progress but found that it was not sufficient.

■ In this case, appellant had made some progress and partially complied with the case plan, but he failed to complete drug rehabilitation or achieve sufficient stability to parent E.M. Appellant tested positive for drugs over one year into the case [2] and after completing a drug rehabilitation program in 2007. He failed to complete the drug treatment program he entered during the case. Further, although he had made laudable efforts at employment, his employment was recent, and he was still not in a position to care for E.M. at the time of the termination hearing. Even completion of a case plan is not determinative; what matters is ₉whether completion of the case plan achieved the intended result of making the parent capable of caring for his child. *See Wright v. Ark. Dep't of Human Servs.,* 83 Ark.App. 1, 7, 115 S.W.3d 332, 335 (2003).

Here, the court considered all the evidence and found that appellant had been given a reasonable opportunity to achieve the required goals and there were no compelling reasons to give him more time to work on reunification. The court noted E.M.'s need for permanency and found that it was in her best interest to terminate appellant's parental rights. On this record, we cannot say that this finding was clearly erroneous.

Affirmed.

PITTMAN and BROWN, JJ., agree.

---

2. Appellant contends that he tested positive for drugs only once. Records indicate, however, that he had positive tests multiple times and tested positive as late as June 3, 2011.