BART F. VIRDEN, Judge
Heather Gann appeals the order of the Faulkner County Circuit Court terminating her parental rights to A.G. (born 5/2/04), Q.G. (born 9/12/07), and D.G. (born 8/29/15).[1] We affirm.
On March 16, 2016, a 72-hour emergency hold was taken on Heather and Jacen Gann's three children, and the Arkansas Department of Human Services ("the Department") filed a petition for emergency custody and dependency-neglect. The attached affidavit of facts set forth that the Damascus Police Department received a call that Heather was walking with D.G. in and out of traffic on Highway 65. Chief of Police Rick Perry responded and reported that when he talked to Heather, she seemed "out of her mind" and that she told him that she needed help because a terrorist was "going to get her." Heather was arrested for endangering the welfare of a minor, and she refused a drug screen. Family service worker Cynthia Thompson *20 met with Heather that day and noted that Heather appeared to be under the influence of drugs and that she was "antsy, anxious, and agitated." It was noted in the affidavit that Heather had a prior history with the Department: in November 2010 and in April 2015 the court had made true findings of inadequate supervision, and in August 2015 D.G. was found to have been born with drugs in his system. The circuit court entered an ex parte order for emergency custody. On March 24, 2016, the circuit court entered an order finding probable cause to remove the children from Heather's custody existed at the time of removal and continued to exist.
On May 12, 2016, the circuit court entered an adjudication order following a hearing. The circuit court based its decision in part on Heather's testimony that while she was walking along Highway 65, she had an anxiety attack and had given D.G. to a man named "Russell." D.G. was located at a veterinary clinic across the highway. Heather testified that she could not remember the last time she had taken drugs but that she had not wanted to take a test on the day of removal because she was afraid she had been given methamphetamine without her knowledge. The circuit court also heard the testimony of Chief Perry and family service worker Thompson that reflected their statements found in the affidavit of facts.
The circuit court entered an order finding by a preponderance of the evidence that Heather's children were dependent-neglected and were at substantial risk of harm as a result of neglect due to inadequate supervision and parental unfitness due to Jacen's drug use. The circuit court found that Heather had prior contact with the Department going back to 2010 for true findings of inadequate supervision and for D.G. having been born with drugs in his system and that she was currently incarcerated in the Faulkner County jail for endangering the welfare of a minor.
Heather was ordered to keep in contact with the Department and inform the Department of any changes in address or contact information, submit to psychological testing and drug-and-alcohol assessment and follow any resulting recommendations, maintain sobriety, submit to drug screens, complete parenting classes and demonstrate appropriate parenting skills after completing the classes, participate in individual counseling, maintain stable housing and employment, and demonstrate the ability to protect and keep juveniles safe. Heather was ordered to watch the video "The Clock is Ticking," and the court advised Heather that there was a limited amount of time to comply with the case plan and effect the return of the children. The circuit court informed Heather that a permanency-planning hearing would take place on March 16, 2017, and that failure to make appropriate progress during the statutory time frame and failure to correct the conditions could result in the termination of her parental rights. Heather was allowed to have two hours of supervised visitation per week. The circuit court ordered the Department to develop a case plan, offer services, set up hair-follicle testing, and provide a drug-assessment referral.
On July 12, 2016, after a review hearing, the circuit court entered an order finding that the children should remain in the Department's custody, that the concurrent goals were reunification and adoption, and that visitation between the parents and children was appropriate. The circuit court found that Heather had failed to comply with the case plan and orders, specifically, she had not maintained contact with the Department after she was released from the Faulkner County Detention Center. The circuit court found that the Department *21 had complied with the case plan and court orders and had made reasonable efforts to provide family services toward reunification.
On October 25, 2016, the circuit court entered a review order pursuant to a hearing. Again, the circuit court found that Heather had not complied with the case plan, and it found that Heather had spent the majority of the case in jail,[2] she had failed to attend NA/AA meetings, she had not been active in the ordered services, and she had made no progress toward alleviating the causes of removal. The circuit court found that the Department had complied with the case plan.
On January 24, 2017, the circuit court entered a review order in which it found that visitation between the parents and the children was appropriate, and it increased visitation to four hours of unsupervised visitation per week. The court found that Heather had partially complied with the case plan: she was employed part time, she was scheduled to have a psychological evaluation in March, she would complete parenting classes in one week, and she had been in her current address for two months; however, her hair-follicle test in October had been positive for methamphetamine, she had missed some visitation, she had been in police custody for several months after the removal, she had tested positive for THC two weeks before the hearing, and she had made minimal progress toward alleviating the conditions that caused removal. The Department was found to have complied with the case plan.
Heather's situation had improved by the next hearing on March 7, 2017. Pursuant to that hearing, the circuit court entered a permanency-planning order setting forth that reunification was still the goal and that visitation was expanded to allow visitation at the treatment facility. The circuit court found that Heather had complied with the court orders. Namely, she had completed parenting classes, and she had completed drug assessment and was ready to begin the thirty-day inpatient-treatment program. Heather had completed her psychological assessment and had begun counseling, and she had "made much progress toward alleviating or mitigating the causes of the juveniles' removal from the home."
On June 12, 2017, the Department filed a petition to terminate Heather's parental rights. The Department alleged three statutory grounds for termination. First, the Department alleged that the juveniles had been adjudicated by the court to be dependent-neglected and had continued out of the custody of the mother for twelve months, and despite a meaningful effort by the Department to rehabilitate Heather, she had failed to correct the conditions that caused removal. Specifically, the Department alleged that after the children had been removed on March 16, 2016, Heather had been absent for much of the case due to her incarceration, and she had been jailed again from September 10 to October 10. The Department stated that Heather had begun participating in services right before the permanency-planning hearing and that she entered drug treatment fourteen months after the case began. The Department asserted that though Heather had made efforts to comply with the case plan, she had begun at the eleventh hour, and she had not had time to demonstrate her sobriety or the ability to supervise the juveniles and to meet their needs.
Second, the Department alleged that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect *22 that demonstrate that placement of the juveniles in Heather's custody was contrary to the juveniles' health, safety or welfare and that, despite the offer of appropriate family services, Heather had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevent the placement of the juveniles in her custody. Specifically, the Department argued that Heather had not obtained stable employment or housing, had not exercised visitation until late in the case (after the first nine months), and had been arrested during the pendency of the case. The Department alleged that Heather lived a chaotic, unstable lifestyle that would be detrimental to the children's welfare if they were returned to her.
Last, the Department alleged the "aggravated circumstances" ground: that there is little likelihood that services to the family would result in successful reunification. Specifically, the Department asserted that Heather had been offered ample services, yet she had not demonstrated an ability to maintain sobriety. Heather's eleventh-hour participation meant that she could not reunify with the children in a time period that would be meaningful to the children as they had been in foster care for fifteen months.
The next day, the fifteen-month review hearing took place. In the following order, the court found that reunification was still not possible, and adoption became the primary goal. The court found that Heather had partially complied with the case plan, specifically, she was in inpatient drug treatment, and she had made minimal progress toward alleviating the conditions that caused removal; however, she had not attained stable housing or employment. The court found that the Department had complied with the case plan.
At the July 25, 2017 termination hearing, Heather testified that she had completed her thirty-day inpatient treatment, and she was now at the Decision Point aftercare facility where D.G. was allowed to stay with her. Heather testified that she had arranged for D.G. to live at the facility but that her caseworker had not made "any moves to place D.G. there[.]" Due to their age, Heather's older children could visit only on the weekend. Heather testified that the circuit court had expanded visitation to four hours of unsupervised visitation per week but that the Department had not provided transportation for the children on a weekly basis as ordered. Decision Point program assistant Lisa Dowdy testified that she had facilitated Heather's visitation with the kids; however, Dowdy did not recall that the caseworker ever stated that Heather was allowed weekly visitation. Dowdy explained that she sets up visitation according to what the caseworker says is ordered by the court.
Department caseworker Cheryl Taylor testified that she had not tried to have D.G. placed with Heather at Decision Point because the Department's policy is to keep siblings together, though she admitted that the children had not been kept together during this case. Taylor testified that Heather had gotten a late start in the case and that she was not in a position to take the kids home. Heather obtained employment at a horseback-riding facility only two days before the hearing, the potential home on the property where she worked was not ready, and she had not demonstrated the ability to safely parent her children. Taylor explained that she had not pursued visitation between Heather and the kids when Heather lived in White County because the kids had not been welcome where she was staying. Taylor admitted that Decision Point allowed visitation for the older kids every weekend *23 and not every other weekend as she previously stated.
Heather testified that she had not consistently exercised visitation because she had been in jail for about four months of the case and that she spent her time out of jail trying to find housing and employment. Heather explained that she did not visit the children from October to January because she did not have family support or a regular place to stay and that she and the father were "trying to get our wits about us and get back into the case."
Heather stated that she had obtained employment at the Heels Down horseback-riding facility the Sunday before the hearing and that she had been offered a three-bedroom, two-bathroom home on the property where she works, which she could have set up within a week. Heather testified that she would earn $10 per hour and would work between thirteen and twenty hours per week, which would allow her to pay the $500-per-month rent that included utilities.
The court asked Heather if she could demonstrate that she could maintain her sobriety, employment, and housing if she had not done so in the past year. Heather admitted that she had delayed participation in the case and that she had not done her drug assessment until March 2017. Heather explained that after the assessment, she then had to wait for a bed at Wilbur Mills treatment facility. When she arrived on April 11, Heather was immediately removed from the facility because it was discovered that her sister was already there. After that setback, Heather received placement at a Bentonville facility on May 8. Heather testified that she is strong willed and that she had come to realize that her kids mean everything to her and deserve better.
Heather's two older children testified at the termination hearing. A.G., thirteen at the time of the hearing, stated that she had never seen her mother use drugs and that she did not feel afraid or unsafe when she was in her mother's care. A.G. testified that she wanted to live with her mother, but that foster care had been okay. Q.G., who was a month away from his tenth birthday, testified that he wanted to go live with his mother first, his grandparents second, and his father third. Q.G. stated that adoption would be okay if he could talk to his parents and meet up with them after work sometimes.
On August 14, 2017, the circuit court entered an order terminating Heather's parental rights and based its decision on the failure-to-remedy statutory ground and aggravated-circumstances ground. The circuit court found that due to Heather's incarceration, it had been impossible to perform drug testing for much of the case; however, she had tested positive for methamphetamine on October 25, 2016, positive for Oxycontin on January 27, 2017, and positive for THC on January 31, February 16, and February 23, 2017. The court found that when the children were placed in foster care both parents had been serious drug abusers. The court noted that though Heather last tested positive in February, she was still living in the rehab facility and could not take all the children into her custody. The court found that Heather had not taken steps to deal with her drug issue until after the permanency-planning hearing in March and that she had not "demonstrated an ability to maintain a clean and sober lifestyle and provide for the juveniles' needs." The circuit court acknowledged that Heather and her children loved each other but that it was not convinced that the kids could be safely returned to her custody.
The circuit court also found by clear and convincing evidence that it was in the children's best interest to terminate Heather's *24 parental rights. It considered the adoption specialist's testimony that the children were adoptable and the potential harm to the children if returned to their mother. Specifically, the court considered Heather's inability to maintain a sober lifestyle and demonstrate an ability to safely parent the children. Heather filed a timely notice of appeal.
On appeal, Heather argues that the circuit court erred when it determined that the evidence was sufficient to prove the statutory grounds for termination and that there was sufficient evidence to prove that termination is in the best interest of the children. The crux of Heather's argument is that her slow compliance is not a basis for termination when weighed against the other evidence of her improvement and that the court did not consider all of the relevant factors in her favor. We disagree, and we affirm.
The standard of review in termination-of-parental-rights appeals is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. Hernandez v. Ark. Dep't of Human Servs. , 2016 Ark. App. 250, 492 S.W.3d 119. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. Id. Credibility determinations are left to the fact-finder, here, the circuit court. Schaible v. Ark. Dep't of Human Servs. , 2014 Ark. App. 541, 444 S.W.3d 366.
The right of a natural parent to the custody of his or her child is "one of the highest of natural rights." Mayberry v. Flowers , 347 Ark. 476, 484, 65 S.W.3d 418, 424 (2002). Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. Helvey v. Ark. Dep't of Human Servs. , 2016 Ark. App. 418, 501 S.W.3d 398. A circuit court may order termination of parental rights if it finds there is an "appropriate permanency placement plan" for the child and further finds by clear and convincing evidence that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2017). Finally, there must be clear and convincing evidence to support one or more of the nine grounds for termination listed in Arkansas Code Annotated section 9-27-341(b)(3)(B).
The intent of our termination statute is to provide permanency in a minor child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare, and where the evidence demonstrates that the return cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). The issue is whether the parent has become a stable, safe parent able to care for the child. Lee v. Ark. Dep't of Human Servs. , 102 Ark. App. 337, 285 S.W.3d 277 (2008).
As a preliminary issue, we address Heather's assertion that the circuit court erred because "slow compliance is not a basis for terminating a parent's parental rights." We disagree with her characterization of the circuit court's findings. The circuit court makes it clear that Heather's slow compliance with the case plan is not the basis for termination but that it is one of the reasons for Heather's inability to demonstrate sobriety and stability in a reasonable amount of time as viewed from the children's perspective. Heather likens the instant case to *25 Prows v. Arkansas Department of Human Services , 102 Ark. App. 205, 283 S.W.3d 637 (2008), in which we reversed the circuit court's termination of parental rights based on its erroneous understanding of the termination statute. In Prows , the circuit court found that it was prohibited from considering the mother's recent improvement in her mental stability and that the termination statute dictated that if the child cannot be returned to the custody of the parent the day of the termination hearing, then the court is required to terminate parental rights. By contrast, in the instant case the circuit court did not base its decision on an erroneous understanding of the statutory grounds for termination, as is shown in the order:
Although Heather has made some overtures toward participating in services, she was absent from her children's lives for the majority of this case and did not avail herself to any services until the 11th hour. Even if Heather completes inpatient rehab, she has failed to demonstrate that she will be able to maintain her sobriety for any substantial period of time, and she has failed to demonstrate an improved ability to supervise the juveniles and meet their needs.
We now turn to Heather's argument that there is insufficient evidence that she failed to remedy the conditions that caused removal. Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a) sets forth that termination is warranted when a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the Department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Heather challenges the circuit court's conclusion that she "did not remedy her drug issue." Heather cites several cases in support of her argument that reversal is warranted, including Kight v. Arkansas Department of Human Services , 87 Ark. App. 230, 189 S.W.3d 498 (2004). In Kight , we reversed the termination of Kight's parental rights where the mother had remained sober for six months prior to termination despite a few lapses in judgement such as fraternizing with drug-abusing/criminal father of children and relapse during the case while pregnant. Kight is distinguishable for several important reasons, the most relevant being that Kight had been given weekend passes for the six months she was in the treatment facility, and she had managed to maintain her sobriety despite being unsupervised on the weekends. This is demonstrable sobriety. Furthermore, the sole cause of removal in Kight was parental drug use. Inadequate supervision was not at issue, and Kight's caseworker testified that even though Kight had been using drugs, she had been working and had been a stable caregiver. Here, inadequate supervision was the specific cause of removal from Heather's custody, and she was never able to demonstrate that she could adequately supervise her children.
The circuit court found that though Heather had not tested positive since late February, she had not demonstrated that she could maintain a sober lifestyle and provide for the children's needs. At the termination hearing, Heather testified that she had delayed her participation in the case plan such that she tested positive for drugs eleven months after the children were removed, that she did not complete a drug-and-alcohol assessment until one year into the case, and that she did not begin drug treatment until May 2017. Heather asserts that forces beyond her control were the cause of delay; however, it was her drug use and wandering onto the highway with her child that caused her incarceration for 105 days for endangering the *26 welfare of a minor. While Heather was out of jail from July to September, and from October to January, she did not avail herself to the services relating to her drug use or her parenting ability. Though the lack of availability at the treatment facility and the unforeseen circumstance of having to leave one facility because her sister was in treatment there also contributed a two-month loss of time, Heather was not just two months behind schedule.
The circuit court noted that Heather's progress was commendable, and it acknowledged that Heather had maintained sobriety and had achieved a total of five months without a positive drug screen; however, she had not begun taking steps to address her substance abuse until after the permanency-planning hearing, and at the time of the termination hearing, Heather still lived at the treatment facility and could not have all three children with her there. The weekend before the termination hearing Heather acquired a job, and she was offered a home at the ranch where she worked, but she had not begun work and the house was not ready for occupation. In essence, Heather's challenge to the sufficiency of the evidence seeks to have this court reweigh the evidence, which we cannot do. Credibility determinations are left to the circuit court. Greenhaw v. Ark. Dep't of Human Servs. , 2016 Ark. App. 294, 495 S.W.3d 109. Because the Department was required to prove only one statutory ground, we do not address the aggravated-circumstances ground. See Shawkey v. Ark. Dep't of Human Servs. , 2017 Ark. App. 2, 510 S.W.3d 803.
We also affirm the circuit court's finding that it is in the best interest of the children to terminate Heather's parental rights. Pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(A)(i)-(ii), in considering "best interest," the circuit court must consider two factors: (1) the likelihood of the children's adoption as a permanency plan and (2) potential harm caused by returning the children to the custody of the parent.[3] In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. Dowdy v. Ark. Dep't of Human Servs. , 2009 Ark. App. 180, 314 S.W.3d 722. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, at 9, 378 S.W.3d 290, 295.
Heather argues that the best-interest analysis is not limited to just adoptability and potential-harm factors and that the circuit court erred by failing "to consider the children and their desire to return to their mother or the marked progress [she] made during this case." Heather asserts that our court has considered several different factors when reviewing a circuit court's best-interest finding, including whether the parent inflicted actual harm on the child, and what effect termination would have on the family relationship. See Lively v. Ark. Dep't of Human Servs. , 2015 Ark. App. 131, 456 S.W.3d 383 ; Caldwell v. Ark. Dep't of Human Servs. , 2010 Ark. App. 102, 2010 WL 374432. In both Lively and Caldwell , our court reversed the circuit court's decision that it was in the best interest of the children to terminate parental rights in part because important family relationships would be affected by termination, and because termination was not necessary to achieve permanency, *27 which is the goal of the statute. However, in both these cases, the children had a permanent, stable home with their biological mothers, and there was "no expectation that they would ever be put up for adoption"; thus, termination of these fathers' parental rights was not warranted. Lively , 2015 Ark. App. at 8, 456 S.W.3d at 388. Here, there was no testimony or evidence that the children have a permanent, stable home with their father or any family members, and the circuit court did not err in deciding that adoption was necessary to achieve permanency.
Furthermore, the circuit court made it clear that it considered the strides Heather had made in the last five months and the children's feelings toward their parents but that the children's safety was foremost in its decision. The circuit court held that
[w]hen the children came into foster care, both Heather and Jacen had serious substance abuse issues that interfered with their ability to safely parent their children. Although both parents have "checked the box" and completed inpatient drug rehabilitation, neither parent has demonstrated an ability to maintain a clean and sober lifestyle and provide for the juveniles' needs. Heather has not had a positive screen since February 23, 2017, but as of the date of the termination hearing, she was still residing at the inpatient rehabilitation facility and could not take all three juveniles into her care and custody. Jacen relapsed numerous times throughout this case, and Heather did not begin to take steps to address her substance abuse until after the permanency planning hearing. While it is apparent that the parents love their children and that their children love their parents, the Court is not convinced that the children can be safely returned to either parent.
Again, Heather asks this court to reweigh the evidence of her progress. The circuit court decided that because Heather had not demonstrated that she could remain sober and supervise her children adequately, it could not safely return the children to her care. Moreover, in light of the testimony that the Department had been involved with the family for Heather's drug issues and inability to properly supervise her children since 2010, we cannot find error in the circuit court's refusal to allow Heather more time. The children's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. Knuckles v. Ark. Dep't of Human Servs. , 2015 Ark. App. 463, 469 S.W.3d 377. In spite of her recent completion of drug rehabilitation, the primary issue-whether Heather had become a stable, safe parent with the ability to care for her children-remained unresolved.
Affirmed.
Gladwin and Vaught, JJ., agree.

Father Jacen Gann's parental rights were also terminated in the circuit court's order; however, Jacen is not a party to this appeal.

Heather was released from the Faulkner County jail in or around late June, and she was incarcerated again in the Cleburne County jail from September 10 to October 10.

Heather does not challenge the circuit court's finding of adoptability.